## Witmer v. Niesley

*James Humer*, for plaintiff.
*George Faller*, for defendants.

WEIDNER, J., January 11, 1968.—This is a complaint in equity for a specific performance of an agreement of sale of real estate. The pleadings consist of the complaint, preliminary objections, amended complaint and answer to the amended complaint.

The issue raised is whether specific performance of an agreement for sale of real estate will be decreed, where the agreement provides for delivery of a good and marketable title within 45 days, and in default of same, provides that the seller shall return the down payment without interest, and pay expenses of any title search, when, at the date of the agreement, during the 45-day period, and at the date of the complaint, there existed liens against the premises in the amount of $98,102.69, and the purchase price was $60,000.

### FINDINGS OF FACT

The court finds the following facts:

1. Defendant, Paul L. A. Niesley, is the owner of a farm situated in South Middleton Township, Cumberland County, Pa., containing 127 acres, 12 perches, more or less, known as the "lower farm".

2. Defendant, Paul L. A. Niesley, is the owner of an additional farm and other tracts of land adjacent to the "lower farm", containing approximately 118 acres.

3. Both said farms are improved with stone dwelling houses, barns and other outbuildings.

4. On March 31, 1966, defendants, Paul L. A. Niesley and Helen E. Niesley, his wife, entered into a written agreement with Louis Traiman Auction Company to sell all of said real estate, totalling 245 acres, more or less, at absolute auction on or before April 30, 1966.

5. In accordance with said agreement, said auction company advertised the sale and offered said farms in parcels as an entirety, to be sold at absolute auction on the premises on Wednesday, April 27, 1966.

6. On April 27, 1966, the auction company offered said premises for sale as six parcels, all of which were

duly purchased, either singly or in a combination of not more than two parcels, by bona fide bidders, and by the depositing with the auction company of checks for 15 percent of the purchase price.

7. Parcels nos. 1 and 5, comprising all of the "lower farm" and containing 127 acres, 12 perches, more or less, improved with a stone and frame dwelling house and a barn and other outbuildings, were purchased by plaintiff, Max E. Witmer, for the sum of $60,000, and a deposit of 15 percent thereof, or $9,000, was paid by plaintiff to the auction company.

8. Thereafter, the auction company offered the premises in various other combinations of parcels, but no bids were received for any other combination.

9. Thereafter, the auction company offered the entire 245 acres as an entirety, and no bid was received therefor.

10. Defendant, Paul L. A. Niesley, subsequently refused to perform his contract of sale with Leonard Shughart, for parcel no. 6, sold at a price of $37,000.

11. Under the authority of the listing agreement, the auction company executed a contract with plaintiff as the purchaser of parcels 1 and 5.

12. At said auction sale, parcels nos. 2 and 3 were sold in combination for $27,500, parcel no. 4 for $45,000, and parcel no. 6 for $37,000, or a total of $111,700 for the remainder of the premises not including the parcels sold to plaintiff.

13. Plaintiff paid to the auction company the sum of $9,000 on the day of the sale, being 15 percent of the purchase price, in accordance with the agreement of sale.

14. Subsequent to the date of the sale, defendant orally refused to convey the premises to plaintiff.

15. On or about May 27, 1966, plaintiff tendered to defendant a copy of the proposed deed and the copy of the proposed settlement sheet for parcels nos. 1 and 5,

which defendant refused, because he could not convey good and marketable title.

16. The premises consisting of parcels nos. 1 and 5 are unique.

17. The subject premises are subject to the lien of a mortgage with Harrisburg National Bank and Trust Company with the amount of $38,289.67, due as of January 16, 1967.

18. The premises are subject to the lien of a judgment of the First National Bank of Red Lion, entered to May term, 1966, no. 315, on a note dated December 21, 1964, on which the unpaid principal balance is $5,750, with interest from January 1, 1966.

19. The premises are subject to the lien of a judgment of the First National Bank of Red Lion and entered to May term, 1966, no. 316 on a note dated December 23, 1964, on which the unpaid principal balance is $3,841.70, with interest from December 23, 1965.

20. The subject premises are subject to the lien of Federal estate taxes due on Elizabeth B. Niesley Estate, on which the sum of $51,228.69 was due as of January 16, 1967.

21. As determined by the price at which the total of defendant's real estate was sold at the public sale on April 27, 1966, it then had a market value of $171,700.

22. All of the property owned by defendant in Cumberland County is of sufficient value to satisfy all of the outstanding liens.

23. Title to said premises is good and marketable upon the satisfaction of liens of record.

24. Plaintiff, Max E. Witmer, desires to take title in the name of himself, Max E. Witmer, and his wife, Helen M. Witmer.

25. By reason of the delay in making settlement and in giving possession of said premises to plaintiff, plain-

tiff has been unable to plant 60 acres of corn, which would yield him a net profit after expenses of $6,750.

26. By reason of the delay in making settlement and in giving plaintiff possession of the premises, he has been unable to plant 15 acres of wheat at a net profit, after expenses, of $960.

27. By reason of the delay in making settlement and giving plaintiff possession of the premises, he has been unable to plant 16 acres of barley at a net profit, after expenses, of $720.

28. By reason of the delay in making settlement and in giving plaintiff possession of the premises, he was unable to plant 40 acres of hay, which would have yielded him a net profit, after expenses, varying according to the yield produced by the hay, from $2,160 to $4,320.

29. There was no showing whatever that the sale was conducted in any manner other than in accordance with the usual and proper manner for a sale at absolute auction.

30. There was no indication whatever that the prices bid for the respective parcels were not the full, fair and market values thereof, and the prices bid are, in fact, full and fair, and the best that can be obtained.

31. There was no showing that defendant, Paul L. A. Niesley, was insolvent at the time of the sale or that he is insolvent at the present time.

32. The total of the foregoing liens is $98,102.69, which exceeds the bid price of $60,000.

33. In view of the above liens, the title of defendants is not free and clear of all liens and encumbrances, good and marketable, and such as will be insured at regular rates by any reputable or responsible title insurance company.

34. In such case, plaintiff's agreement provided he shall be repaid the deposit money paid on account, without interest, and he also shall be reimbursed for the ex-

penses he may have been put to for title searches, and thereupon defendants' liability under the agreement shall absolutely cease.

35. Plaintiff was aware, or should have been aware, of such provision, since the entire agreement was read at the sale. In addition, he is bound by this agreement as signed by him.

36. The agreement of sale provides:

"The balance of the purchase price shall be paid in cash at the time of final settlement and delivery of deed, which shall take place on or before forty-five (45) days from the date hereof".

37. The agreement of sale further provides:

"Except as may be otherwise stated herein, title shall be good and marketable and such as will be insured at regular rates by any reputable Title Insurance Company, otherwise the Buyer shall be repaid the deposit money paid on account, without interest, and he shall also be reimbursed for the expenses he may have been put to for title searches and thereupon the Seller's liability hereunder shall absolutely cease".

DISCUSSION OF QUESTIONS OF FACT AND LAW

Plaintiff asks for specific performance of a contract for the sale of real estate, being a 127 acre, 12 perch, farm, which plaintiff purchased from defendant at auction on April 27, 1966, for $60,000. The agreement of sale called for settlement within 45 days after plaintiff made a down payment of $9,000.

At the time of the sale and at present, there are liens against the property in the amount of $98,102.69.

Plaintiff contends that since defendants' lands in toto are worth more than the liens, he should be compelled to liquidate his other land and satisfy the liens to free subject land of its liens and convey marketable title; and, further, that since the subject tract can be released from the Federal estate tax lien on application by defendant, defendant should be ordered to procure

a release of that lien and satisfy the other liens on the subject tract from the proceeds of the sale, thereby giving marketable title.

However, under the terms of the contract, this will not be done.

The contract specifically provides that on the seller's inability to convey marketable title, the buyer is entitled to a refund of the down payment, without interest, and expenses of a title search. Specific performance of the contract for the sale of land may not be decreed at the suit of a purchaser, where the contract limits the vendor's obligation to the return of the down payment in the event of the inability to convey the premises clear of all encumbrances: Jones v. Gravity Fill Service Station, 361 Pa. 198 (1949).

There is no doubt in this case that the title was not marketable and free of liens on the date of the sale and at present.

A court of equity will not decree specific performance of a contract for the sale of real estate, where it appears that defendant cannot deliver a title free and clear of all encumbrances, as required by the articles of agreement: Cusono v. Mecaskie, 76 Pa. Superior Ct. 221 (1921).

A bill for specific performance of a contract for sale of real estate, showing that necessary proceedings to clear the title, as agreed by the vendor, had never been instituted, is insufficient to warrant relief. Specific performance, being not a matter of right but resting in discretion, will usually be denied against a vendor unable to comply with his contract for lack of title, although his lack of title may result from his own act or from his omission to act: Cattell v. Jefferson, 51 F. 2d 317 (1931).

The case of Bloshinski v. Falaz, 168 Pa. Superior Ct. 565, is not in point or controlling here for several reasons, mainly that plaintiff does not ask to take such

title as defendant has and subject to the liens, as in that case.

Equity cannot order defendant to liquidate his other assets to clear the title to the subject tract. There is nothing in the agreement to provide for this, in fact, the agreement which plaintiff seeks to enforce provides that on failure of defendant to have clear title, plaintiff is entitled only to a refund of the down payment, without interest, and his expenses incurred for title search.

Nor can the court order defendant to obtain a release of the Federal estate tax lien, as it is not certain that he could do so. Ironically, plaintiff asks the court to order defendant to do what it appears from the record plaintiff might have done himself. The record shows that a "purchaser" may apply for the release of a tract of land from the lien of a Federal estate tax. This, plaintiff has not done.

Plaintiff is entitled in this case only to a refund of the down payment in the amount of $9,000, without interest, there being no evidence of any expense incurred for title search. Plaintiff is not entitled to loss of profits from crops he would have planted. He is limited to the remedy provided by the contract.

Accordingly, a decree for specific performance cannot issue, but plaintiff is entitled to recover his down payment in the amount of $9,000.

## Conclusions of Law

1. Specific performance will not be decreed against a vendor unable to comply with his contract for lack of title, even though the lack of title may result from his own omission to act.

2. Defendant lacks marketable title clear of liens and encumbrances.

3. A court of equity will not decree specific performance of a contract for the sale of real estate, where it appears that defendant cannot deliver the title free

and clear of all encumbrances, as required by the articles of agreement.

4. Specific performance of a contract for the sale of land may not be decreed at the suit of a purchaser, where the contract limits the vendor's obligation to the return of the down payment in the event of inability to convey the premises clear of all encumbrances.

5. Plaintiff is not entitled to a decree for specific performance.

6. Plaintiff is entitled to a refund of his down payment in the amount of $9,000 without interest.

### DECREE NISI

And now, January 11, 1968, it is hereby decreed and adjudicated as follows:

Plaintiff Max E. Witmer's complaint for specific performance is dismissed upon condition that defendants, Paul L. A. Niesley and Helen A. Niesley, his wife, pay to plaintiff the sum of $9,000 as refund of the down payment.

The Prothonotary of Cumberland County is directed to file this adjudication, enter the within decree nisi, give notice to the parties or counsel of record as provided by the rules of equity practice in Pennsylvania, and unless exceptions are filed to this decree nisi within 20 days after said notice, this decree shall be entered as a final decree by the prothonotary.